## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:

Robert E. Andrews                                      Case No.  14-00803-als7

                          Debtor                    Chapter 7

First American Bank                                      Adv. Pro. 14-30044-als

                          Plaintiff

          v.

Robert E. Andrews

                          Defendant

## MEMORANDUM OF DECISION
### (date entered on docket: October 27, 2015)

Trial was conducted on the Plaintiff's complaint objecting to dischargeability of its debt pursuant to 11 U.S.C. § 523(a)(2) and to entry of the Defendant's general discharge pursuant to 11 U.S.C. §§ 727(a)(2)(a) and (a)(4).  The court has jurisdiction of these matters pursuant to 28 U.S.C. §§ 157(b)(1) and 1334.  Upon consideration of the evidence and arguments the following findings of fact and conclusions of law are entered by the Court pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.  For the reasons stated the Defendant's discharge is denied.

The following facts are either undisputed or were established at trial.  Andrews is the sole officer and shareholder in C Mac Chambers Company, Inc. ("C Mac") an agency that sells

consumer and commercial casualty insurance.  Over the past few years C Mac experienced a decline in clients and corresponding staff reductions.  Currently Andrews is the only employee servicing 125 clients.  C Mac receives income when an insurance company remits a portion of the premium received from an insured.  Such payments are sporadic and are subject to refund or adjustment upon cancelation of the policy or other circumstances that trigger a change in coverage.

Upon the death of C Mac's previous owner Andrews inherited the commercial property where the company was located.  In 2008 Andrews executed a Commercial Fixed Rate Promissory Note in the amount of $895,000 in favor of First American Bank ("FAB"). Mortgages were recorded to secure payment of the loan.  The loan went into default and FAB filed a foreclosure proceeding in July 2011.  This action resulted in an *in personam* judgment against Andrews, which after a sheriff's sale of the property exceeded $300,000.  FAB attempted to collect the outstanding judgment from Andrews through wage and bank account garnishments which were returned unsatisfied.  FAB conducted a Judgment Debtor Examination in April 2013. At that time Andrews stated he was retired.  He further claimed that his only source of funds were his monthly Social Security benefits which he used to pay all of his bills.  As a result of this information FAB suspended its collection efforts.  In February 2014 FAB pursued two remedies simultaneously:  an application to have a receiver appointed to oversee the management of C Mac and an execution against the Debtor's stock in the company.  A hearing was scheduled on the receivership application for April 4, 2014.  The Debtor filed a voluntary chapter 7 petition on April 3, 2014.

Due to C Mac's irregular cash flow, Andrews claims he never received a regular salary or payroll from the business. C Mac's accountant[1] testified that Andrews was free to withdraw any amount of money from his business and he did not monitor such transactions. The accountant confirmed Andrews provided him with an annual listing of expenses. A detailed review of each item was not routinely conducted, but an evaluation as to whether an expense was business or personal was performed. At the end of the company's fiscal year and each calendar year, business expenses that had been paid from funds withdrawn by Andrews and which could be legitimately deducted on the corporate tax return were identified. Other expenses were classified as unreimbursed business expenses which were allocated to Andrews and reflected on his personal tax returns.[2] After these two tasks were completed the accountant would then determine the amount of Andrews' wages to be reported on his W-2 form. Any amounts withdrawn from C Mac that exceeded the combined total of allowable business expenses and the calculated wage amount were added to the "loan to officer(s)" category on the company financial reports and as "loans to shareholder(s)" on its corporate tax return. The financial information reflects an upward trend in these totals as follows: 2010 $6,249; 2011 $3,088; 2012 $175,402; and 2013 $335,521.

DISCUSSION

At the outset, the Court recognizes a denial of a debtor's discharge is a harsh remedy in which the statutory provisions are strictly construed in favor of the debtor while also insuring the bankruptcy process is not abused. *Strauss v. Brown* (*In re Brown*), 531 B.R. 236, 256 (Bankr. W.D. Mo. 2015). The objecting party bears the burden of proof on each of the elements

---

[1] Stephen A. Caster, C.P.A. also provided financial services to Andrews, personally.
[2] Andrews' personal tax returns identify such amounts in excess of $30,000 in each tax year since 2009.

identified in the statute by a preponderance of the evidence. *Korte v. U.S. Internal Revenue Serv.* (*In re Korte*), 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001).

     1.     11 U.S.C. §727(a)(2)

The relevant portion of this code provision states:

> (a) The court shall grant the debtor a discharge, *unless* –
> . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
>
> > (A) property of the debtor, within one year before the date of the filing of the petition . . .

To succeed, FAB must prove the following: within the one year time period prior to filing his bankruptcy petition Andrews transferred or concealed his property with the intent to hinder, delay, or defraud either a creditor or an officer of the estate. *See Korte*, 262 B.R. at 472. The parties agree that substantial payments were made by C Mac to Andrews' wife, MariEllen, within one year before he filed bankruptcy. Andrews denies that he transferred or concealed his property with the intent to hinder, delay or defraud his creditors.

Andrews contends the amounts paid to MariEllen by C Mac were wages she had earned. To support this position he supplied two explanations. First that he had become worried about MariEllen's lack of FICA contributions which would limit her ability to collect Social Security in her retirement. Second, he stated he was hospitalized for over a month in the Fall of 2012 and during that time MariEllen took on an expanded role at C Mac. Andrews explains he had been contemplating retirement and his son was currently not in a position to take over the family business, so it was decided going forward MariEllen would continue working at C Mac and be paid.

The accountant confirms he had a discussion[3] with Andrews related to MariEllen's lack of FICA contributions, but no action was taken to place her on the payroll as a result of this concern. The record reflects that C Mac issued MariEllen multiple checks in calendar year 2013 but the couple's joint tax return reflects no wages being paid to her. Contrary to his statements that he was retired and that MariEllen was running the business, the testimony at trial reflected Andrews had just cut back his work at C Mac. He continued to be involved with clients and incur business expenses on his American Express card. The evidence is undisputed MariEllen gave the amounts paid to her to Andrews. He then used these funds to make payments on their obligations which had always been their practice. Quite simply, nothing much had changed except for MariEllen's initial receipt of the funds previously paid to Andrews.

The text of 11 U.S.C. § 727(a)(2) is in the disjunctive which can result in a denial of discharge for either a transfer *or* a concealment. *In re Coady*, 588 F.3d 1312, 1316 (11th Cir. 2009). The bankruptcy code contains a broad definition of the term "transfer" which includes any "direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with – (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54) (D) (2015). "Asset concealment 'is typically found to exist where the interest of the debtor in property is not apparent but where actual or beneficial enjoyment of that property continued.'" *Korte,* 262 B.R. at 472 (quoting *Kaler v. Craig (In re Craig),* 195 B.R.443. 449 (Bankr. D.N.D. 1996)). Concealments can be structured in a variety of ways and an oddly structured concealment can be just as damaging to a debtor as a typically structured one. *In re Coady* 588 F.3d at 1316 (quoting *In re Ogalin*, 303 B.R. 552, 558 (D.Conn. 2004)). Concealment is also present when it looks as if the debtor has no interest in the property while in reality the debtor retains an interest from

---

[3] He informed Andrews that payroll could not be shifted from him to MariEllen during 2013 and that any future change would need to be justified.

which he or she benefits. *See Korte*, 262 B.R. at 472 (citing *Rosen v. Bezner*, 996 F.2d 1527, 1523 (3d Cir. 1993)). For purposes of § 727(a)(2)(A), "[w]hat is critical under the concealment provision . . . is whether there is concealment of property, not whether there is concealment of a transfer." Rosen, 996 F.2d at 1532. When considering facts similar to those involving C Mac, Andrews and MariEllen, other courts have concluded such conduct warrants denial of discharge under 11 U.S.C. § 727(a)(2). *See In re Coady*, 588 F.3d 1312 (11th Cir. 2009); *In re Carl*, 517 B.R. 53, 67 (Bankr. N.D.N.Y. 2014). The evidence establishes that Andrews concealed his interest in his C Mac draws by diverting them to MariEllen while he continued to use and benefit from those payments.

Andrews' concealment of his interest in his C Mac draws must be accompanied by his intent to hinder, delay or defraud his creditors. Intent under 727(a)(2) must be actual intent as distinguished from constructive intent. A finding of actual intent may be based on circumstantial evidence, inferences drawn from a course of conduct or an evaluation of credibility. *See In re Govani*, 509 B.R. 675, 683 (Bankr. N.D. Iowa 2014). Courts may rely on specific badges of fraud in making a determination of fraudulent intent. *Addison v. Seaver* (*In re Addison*), 540 F.3d 805, 813-14 (8th Cir. 2008). Under Iowa law, these badges of fraud include:

> Whether the transfer was to an insider; whether the debtor retained possession or control of the property transferred after the transfer; whether the transfer was disclosed or concealed; whether, before the transfer was made, the debtor had been sued or threatened with suit; whether the transfer was of substantially all of the debtor's assets; whether the debtor absconded; whether the debtor removed or concealed assets; whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; whether the debtor was insolvent or became insolvent shortly after the transfer was made; and whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

6

Iowa Code § 684.4(2).

Facts supporting multiple badges of fraud are present in the record.  The transactions at issue all involved MariEllen, an insider.  The evidence provided multiple examples indicatingthat Andrews retained control of the property.  For example, upon receiving funds from C Mac, MariEllen would immediately transfer funds to Andrews or his bank account.  Andrews would also endorse checks payable to MariEllen and deposit them into his bank account.  On other occasions he would issue a C Mac check to MariEllen and sign her name on the check.  MariEllen stated that she was never instructed to write checks to herself for payroll, but she cannot explain how she decided the amount or when to pay herself.  She admitted she was not involved in any business or personal matters and that she relied solely upon her husband and the accountant to handle such issues.  All of these circumstances lead to a conclusion that Andrews remained involved in directing and disbursing C Mac funds to MariEllen.  Explanations regarding MariEllen's duties and activities at C Mac are as varied as they are vague.  She first started working for the company in 2006 and later married Andrews.  Her initial roles were confined to responding to client questions and processing insurance cards.  Other than payment of a few small office bills she is unable to specifically identify any increased responsibilities when she began receiving wages.  It is questionable whether there was sufficient value or consideration provided by MariEllen for the substantial wages paid to her by C Mac.

Providing further evidence of intent is the timing of Andrews' retirement, the shift of Andrews' C Mac draws to MariEllen and the change in her employment status which all coincided with FAB's collection efforts against Andrews.  In December 2012 FAB served an execution on West Bank for Andrews' accounts.  It was returned unsatisfied.  During that same

month, MariEllen received a payment from C Mac in the amount of $10,000.[4]  In September

2013, about the time FAB had served a wage garnishment on C Mac, Andrews sent an email to

his accountant stating:  "I can't have any income it has to go to Mari."  In late 2013 or early 2014

MariEllen stopped her involvement at C Mac.  Andrews returned to work and his draws resumes.

Suspicious timing is a factor to be considered when determining intent.  *See Juehring*, 332 B.R.

587, 593 (Bankr. N.D. Iowa 2005).  "Case authority indicates that retention of . . . a beneficial

use interest, coupled with Debtor's attempts to evade payment . . . demonstrated the kind of

actual intent § 727(a)(2)(A) requires."  *Korte*, 262 B.R. at 473.  Based upon the record, the

explanations given for the series of events and transactions that took place between C Mac, the

Defendant and MariEllen are simply not plausible.  The evidence establishes that Andrews acted

with the requisite intent required by the statute.

For the reasons stated Andrews' discharge is denied under 11 U.S.C. § 727(a)(2).

2.        11 U.S.C. § 727(a)(4)

A debtor's discharge may be denied under § 727(a)(4)(A) if the debtor knowingly and

fraudulently made a false oath in connection with his or her bankruptcy case. 11 U.S.C. §

727(a)(4)(A); *Ellsworth v. Bauder* (*In re Bauder*), 333 B.R. 828, 830 (8th Cir. 2005).

Specifically, § 727(a)(4)(A) requires a showing that:

(1) The debtor made a statement under oath;
(2) The statement was false;
(3) The debtor knew the statement was false;
(4) The debtor made the statement with fraudulent intent; and
(5) The statement related materially to the bankruptcy case.

*Klutchko*, 338 B.R. at 567 (quoting *Carlucci & Legum v. Murray* (*In re Murray*), 249 B.R. 223,

228 (E.D.N.Y. 2000)).  A statement under oath can include statements made on a debtor's

---

[4] For purposes of comparison, during the 34 month time period from January 2010 through November 2012 C Mac
paid MariEllen a total of  $10,750.00.

Schedules or Statement of Financial Affairs, along with statements made by a debtor during the bankruptcy proceedings. *Tow v. Henley* (*In re Henley*), 480 B.R. 708, 766 (Bankr. S.D.Tex. 2012). Inaccurate or omitted information constitutes a false oath under this discharge exception. *Kaler v. Craig*, (*In re Craig*), 195 B.R. 443, 451-52 (Bankr. D.N.D. 1996); *In re Lebahn*, No. 02-03829, Adv. No. 03-9062, 2004 WL 726915, *6 (Bankr. N.D. Iowa Mar, 2, 2004); *Britton Motor Serv., Inc. v. Krich* (*In re Krich*)*,* 97 B.R. 919, 923 (Bankr. N.D. Ill. 1988) (citation omitted); *Bailey v. Bailey* (*In re Bailey*)*,* 53 B.R. 732, 735 (Bankr. W.D. Ky. 1985); *see also Mertz v. Rott*, 955 F.2d 596 (8th Cir. 1992). In this Circuit, the law is clear that circumstantial evidence can be used to prove intent and that "statements made with reckless indifference to the truth are regarded as intentionally false." *In re Korte*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001). There is no requirement that a debtor intend that his or her conduct will injure creditors. *Fokkena v. Huff* (*In re Huff*)*,* 349 B.R. 587, 592 (Bankr. S.D. Iowa 2006).

FAB asserts Andrews made a false oath by failing to disclose information on his Statement of Financial Affairs about payments made on two American Express accounts. The following language reflects the relevant portion of Official Form B7 that applied to Andrews' bankruptcy filing:

### 3. Payments to creditors

*b. Debtor whose debts are not primarily consumer debts[5]:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $6,225.

*c. All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders.

---

[5] Andrews' bankruptcy petition states that his debts are primarily business related. FAB is listed on Schedule F of Andrews bankruptcy filing and is his largest single creditor.

(emphasis original).  The document filed and attested to by Andrews' states that he had made no payments of the kind described.

At trial, Andrews maintained he was not required to include information about the American Express payments because they were C Mac expenses that C Mac paid.  He insists he only withdrew funds to pay C Mac expenses which included:  phone and internet service, car payments, gas, car washes, meals, entertainment, a flying club membership and customer appreciation gifts and events.  When questioned about charges to his American Express for Petco, Victoria's Secret, iTunes, hot yoga, Sally's Beauty, and an invisible dog fence Andrews admitted those items would probably have been personal.  In an apparent effort to rationalize his omissions, Andrews states his accountant is responsible for classifying his personal and business expenses.  This statement is neither relevant nor responsive to the information requested.  The question does not request information about the payment of business or personal expenses.  Rather, the question simply requests that *any* payments made to a single creditor during the relevant time period that exceed an aggregate dollar amount be disclosed and detailed.  Invoices and bank account records reflect payments in excess of $6,250 were made by Andrews to American Express within the 90 days prior to Andrews' petition date.  MariEllen held a separate American Express account.  By definition she qualifies as an insider for purposes of Official Form B7 question 3(c).  The payments Andrews made on her behalf to American Express within the one year prior to his petition date were not disclosed.  The responses and omissions by Andrews to Questions 3(b) and 3(c) on his Statement of Financial Affairs constitute false oaths.

The final element under 11 U.S.C. §727(a)(4) requires a showing of materiality.  To be material, the statement must relate to the estate or the debtor's business transactions. *Huff*, 349 B.R. at 592 (citing *Palatine National Bank of Palatine, Illinois v. Olson* (*In re Olson*), 916 F.2d

481, 484 (8th Cir. 1990)); *Klutchko*, 338 B.R. at 568. "The subject matter is material if it concerns the discovery of assets or the existence and disposition of estate property." *Bauder*, 333 B.R. at 830 (citing *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992)).   Andrews' failure to disclose the payments to American Express prevented the chapter 7 trustee from investigating those transactions which may have resulted in the recovery of assets to pay creditor claims.

For these reasons Andrews' discharge is denied under 11 U.S.C. § 727(a)(4).

3.      11 U.S.C. § 523(a)(2)(a)

Denial of Andrews' discharge under 11 U.S.C. §§ 727(a)(2) and 727(a)(4) renders a determination of dischargeability of FAB's debt pursuant to 11 U.S.C. § 523(a)(2) unnecessary.

Based upon the foregoing, the Court concludes that the Plaintiff has satisfied its burden of proof under 11 U.S.C. §§727(a)(2) and (a)(4).


IT IS HEREBY ORDERED

1.    The Defendant's discharge is denied under Count II of the complaint pursuant to 11 U.S.C. § 727(a)(2);

2.    The Defendant's discharge is denied under Count II of the complaint pursuant to 11 U.S.C. § 727(a)(4);

3.    Count I of the complaint is dismissed as moot.

4.    The parties shall bear their own costs.

5.    Judgment shall enter accordingly.


/s/ Anita L. Shodden
Anita L. Shodeen
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Adversary Proceeding